UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DUANE STIFF-BROWN,

        Plaintiff,

v.

UNKNOWN SHAFER et al.,

        Defendants.
_____/

Case No. 1:24-cv-191

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

**I.**      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which

he complains occurred at that facility. Plaintiff sues the following ICF personnel: Correctional Officers Unknown Shafer, Unknown Jenkins, and J. Clark; Sergeant Unknown Leonhardt; Prison Counselor Walton Smith; and Therapist Chalsie Jones.

Plaintiff alleges that at some unknown time, he submitted a grievance against two correctional officers. (Compl., ECF No. 1, PageID.4.) He identifies one as Defendant Leonhardt, who, according to Plaintiff, threatened to spray Plaintiff with tear gas for no reason. (*Id.*)

Plaintiff goes on to assert that Defendant Shafer took Plaintiff's food because Plaintiff and another inmate were talking about Martin Luther King, Jr. (*Id.*) Defendant Shafer told Plaintiff to "shut [his] f***ing mouth" or he would not eat. (*Id.*) Plaintiff stopped talking, and Defendant Shafer still took his food. (*Id.*) Plaintiff alleges further that Defendant Shafer took personal clothes Plaintiff purchased from the inmate store, as well as Plaintiff's shoes. (*Id.*) Plaintiff also references an incident where Defendant Shafer was taking Plaintiff to the shower and "aggressively [took] the cuffs off." (*Id.*) Plaintiff contends that skin ripped off of his left middle finger when Defendant Shafer removed the cuffs. (*Id.*) Plaintiff alleges further that Defendant Shafer keeps calling Plaintiff a "porch monkey and a retard." (*Id.*)

Plaintiff avers that he wrote to Defendants Smith and Jones to tell them about Defendant Shafer's actions. (*Id.*) Plaintiff also told Defendants Smith and Jones that he wanted to go on suicide watch because he was going to kill himself. (*Id.*) According to Plaintiff, Defendants Smith and Jones laughed, and Defendant Smith told Plaintiff that ICF would "have a party for the death of [Plaintiff]." (*Id.*)

According to Plaintiff, ever since he filed a lawsuit, wardens and assistant deputy wardens have been allowing correctional officers to take all of Plaintiff's personal property "to retaliate

2

because of the lawsuit [Plaintiff has] pending." (*Id.*) Plaintiff has submitted over 10 grievances, which have all been rejected. (*Id.*)

Plaintiff goes on to state that he has told Defendant Smith that he was suicidal over five times. (*Id.*, PageID.5.) Plaintiff states that he tried to kill himself twice. (*Id.*) According to Plaintiff, Defendants Clark, Jones, Smith, Jenkins, and Leonhardt told Plaintiff to go ahead and do it. (*Id.*)

Next, Plaintiff contends that Defendant Clark told Plaintiff that he had put dirt in Plaintiff's food. (*Id.*) Plaintiff threw his food tray out of the slot in his cell door. (*Id.*) Defendant Clark said that Plaintiff tried to throw the tray at him "so he [could] retaliate by writing [Plaintiff] a threatening behavior" misconduct ticket. (*Id.*) Plaintiff also alleges that Defendant Clark placed Plaintiff on food loaf restriction "to retaliate as well to make [Plaintiff] suffer and [lose] weight." (*Id.*) Defendant Clark has also used racial slurs and other harassing terms towards Plaintiff. (*Id.*) According to Plaintiff, Defendant Clark told Plaintiff that he was going to make Plaintiff's birthday "a living hell." (*Id.*) Plaintiff contends that Defendant Clark has taken his food and personal property and writes "wrongfully written misconducts that aren't true." (*Id.*)

Based on the foregoing, the Court construes Plaintiff's complaint to assert First, Eighth, and Fourteenth Amendment claims. Plaintiff seeks $500,000.00 in damages, as well as an order allowing him to "choose the prison [he] want[s] to go to for protection [from] the correctional officers that keep[] retaliating against [him]." (*Id.*, PageID.6.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

3

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     First Amendment Claims

In his complaint, Plaintiff appears to suggest that Defendants have taken the actions set forth above in retaliation for a lawsuit and grievances Plaintiff has filed. Plaintiff also alleges that after he threw his tray out of the food slot, Defendant Clark said that Plaintiff "tried to throw it at him so he can retaliate by writing [Plaintiff] a threatening behavior" misconduct. (Compl., ECF

4

No. 1, PageID.5.) He also contends that Defendant Shafer took his food because Plaintiff and another inmate were talking about Martin Luther King, Jr. (*Id.*, PageID.4.)

In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff engaged in protected conduct when he filed a prior lawsuit. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002). He also engaged in protected conduct when he filed grievances. *See Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff's conversation with the other inmate can also be considered protected activity. *See Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010). However, Plaintiff's act of throwing his tray out of the food slot, which certainly violated legitimate prison regulations, was not protected conduct. *Cf. Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (concluding that a prisoner's act of calling a hearing officer a "foul and corrupt bitch" was not protected conduct).

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "capable of deterring a person of ordinary firmness"; the plaintiff need not

5

show actual deterrence. *Bell*, 308 F.3d at 606. Here, the Court concludes that all of the alleged acts taken by Defendants, except for the occasional deprivation of food by Defendants Shafer and Clark, constitute adverse actions for purposes of Plaintiff's retaliation claims. The denial of a single or occasional meal simply does not rise to the level of adverse action sufficient to support a retaliation claim. *See, e.g.*, *Moore v. Liewert*, No. 22-2506, 2023 WL 8378827, at *3 (6th Cir. Aug. 16, 2023) (noting that "the denial of a single meal, even taking into consideration [the plaintiff's] diabetes, is a de minimis event that would not deter a prisoner of ordinary firmness from engaging in protected conduct"); *Romero v. Lann*, 305 F. App'x 242, 243 (5th Cir. 2008) (affirming the denial of a retaliation claim because being denied two meals in eight months was de minimis); *Williams v. Hawn*, No. 1:21-cv-446, 2023 WL 2854301, at *5 (W.D. Mich. Jan. 19, 2023) (citing cases for the notation that "missing a single or occasional meal does not amount to adverse action sufficient to sustain a First Amendment retaliation claim"); *Lee v. Richardson*, No. 1:13-cv-329, 2016 WL 5389814, at *6 (W.D. Mich. Aug. 8, 2016), *report and recommendation adopted*, 2016 WL 5372293 (W.D. Mich. Sept. 26, 2016) (noting that "[t]he denial of occasional meals does not amount to adverse action sufficient to support a retaliation claim"). Accordingly, Plaintiff's First Amendment retaliation claims against Defendants Shafer and Clark premised upon the deprivation of a meal or food will be dismissed.

With respect to Plaintiff's remaining retaliation claims, it is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v.*

*Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotations omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) (holding that "bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Here, Plaintiff merely alleges the ultimate fact of retaliation with respect to his remaining retaliation claims. Plaintiff has alleged no *facts* to support his speculative beliefs that Defendants have acted in the ways set forth above because Plaintiff filed grievances and a lawsuit. Plaintiff's complaint does not even allege that Defendants were aware of Plaintiff's lawsuit and grievances. Simply because one event precedes another does not automatically show retaliation. *See Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"); *cf. Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004) (noting that "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive"). The Court, therefore, will dismiss Plaintiff's remaining First Amendment retaliation claims against Defendants.

### B. Eighth Amendment Claims

The Court has construed Plaintiff's complaint to assert that Defendants violated his Eighth Amendment rights in various ways.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The

Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a

8

substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1. Verbal Harassment and Threats

The Court has construed Plaintiff's complaint to assert an Eighth Amendment claim against Defendant Leonhardt premised upon Plaintiff's allegation that Defendant Leonhardt threatened to spray Plaintiff with tear gas. (Compl., ECF No. 1, PageID.4.) Plaintiff also contends that Defendants Shafer and Clark have used racial slurs and other harassing terms against him. (*Id.*, PageID.4–5.)

As an initial matter, while unprofessional, allegations of verbal harassment or threats by prison officials towards an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955; *see also Johnson v. Cathers*, No. 22-5246, 2022 WL 19334566, at *2 (6th Cir. Nov. 9, 2022) (affirming the dismissal of an inmate-plaintiff's claim that a correctional officer violated his Eighth Amendment rights "by insulting him and threatening to pepper spray him"). Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Ivey*, 832 F.3d at 955. Accordingly, while the Court does not condone the use of such language and threats, any Eighth Amendment claims against Defendants Leonhardt, Shafer, and Clark premised on a threat to use tear gas and harassing language will be dismissed.

### 2. Excessive Force

Plaintiff alleges that on one occasion, Defendant Shafer was taking Plaintiff to the shower and "aggressively" removed the cuffs from Plaintiff's wrists, causing skin to rip off of Plaintiff's

9

middle finger. (Compl., ECF No. 1, PageID.4.) The Court construes this allegation to assert an Eighth Amendment excessive force claim against Defendant Shafer.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "'evolving standards of decency.'" *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "'involve the unnecessary and wanton infliction of pain.'" *Id.* at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "'totally without penological justification.'" *Id.*

Not every shove or restraint, however, gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights") (internal quotations omitted). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of

the prison officials." *Williams*, 631 F.3d at 383. The Court asks "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (internal quotations omitted). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

While the Court is sympathetic to the fact that skin was ripped off of Plaintiff's finger, Plaintiff's complaint is devoid of facts from which the Court could infer that Defendant Shafer acted "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Plaintiff's description of Defendant Shafer's removal of the cuffs as "aggressive" is not sufficient to lead to an inference that Defendant Shafer acted maliciously. The conclusory facts alleged by Plaintiff suggest that Defendant Shafer, at most, acted negligently when he removed the cuffs from Plaintiff's wrists. Allegations of negligence, however, fall short of the deliberate indifference standard required to

state an Eighth Amendment claim. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *see also Rhodes v. Michigan*, 10 F.4th 665, 678 (6th Cir. 2021) (noting that Supreme Court precedent "is clear that the deliberate indifference standard demarcates accidents and ordinary injuries from actionable conduct in the Eighth Amendment context"). Plaintiff's Eighth Amendment excessive force claim against Defendant Shafer will, therefore, be dismissed.

### 3. Issues with Meals and Placement on Food Loaf

Plaintiff contends that on one occasion, Defendant Shafer took Plaintiff's food because Plaintiff and another inmate were talking about Martin Luther King, Jr. (Compl., ECF No. 1, PageID.4.) Plaintiff also alleges that Defendant Clark told Plaintiff that he placed dirt in his food on one occasion, took his food, and placed Plaintiff on food loaf restriction "to make [Plaintiff] suffer and [lose] weight." (*Id.*, PageID.5.)

"The Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). The Constitution "does not mandate comfortable prisons," however. *Rhodes*, 452 U.S. at 349. Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, does not rise to Eighth Amendment violation, where the prisoner fails to allege that his health suffered); *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *see also Staten v. Terhune*, 67 F. App'x 462, 462–63 (9th Cir. 2003)

(finding the deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (finding the denial of a few meals over several months does not state a claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (finding the deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

Considering this case law, Plaintiff's allegation that Defendant Shafer took his meal on one occasion fails to state an Eighth Amendment claim. Likewise, Plaintiff's conclusory allegation that Defendant Clark took his food fails to state an Eighth Amendment claim. Plaintiff's complaint is devoid of facts suggesting that his health suffered from being deprived of food on any occasion. Plaintiff's Eighth Amendment claims against Defendants Shafer and Clark premised upon deprivations of food will, therefore, be dismissed.

Plaintiff alleges that Defendant Clark told Plaintiff that he had put dirt in Plaintiff's food on one occasion. (Compl., ECF No. 1, PageID.5.) Plaintiff indicates that he threw the tray out of the slot in his cell door. (*Id.*) While unprofessional, "the tampering of a food tray on one occasion does not rise to the level of an Eighth Amendment violation." *Johnson v. Deeren*, No. 2:12-cv-205, 2012 WL 6019365, at *9 (W.D. Mich. Dec. 3, 2012); *see also Cross v. McMackin*, No. 87-3053, 1987 WL 44544, at *1 (6th Cir. Aug. 24, 1987) (noting that "[c]laims of occasional foreign objects in food do not state an [E]ighth [A]mendment violation of the right to remain free from cruel and unusual punishment"). Plaintiff's Eighth Amendment claim against Defendant Clark premised upon dirt in Plaintiff's food will, therefore, be dismissed.

Plaintiff also contends that Defendant Clark placed him on food loaf restriction. The Sixth Circuit, however, has repeatedly held that a diet of food loaf does not violate the Eighth Amendment because nutritional and caloric requirements are met. *See, e.g.*, *Griffis v. Gundy*, 47

13

F. App'x 327, 328 (6th Cir. 2002); *Payton-Bey v. Vidor*, No. 94-2472, 1995 WL 603241, at *1 (6th Cir. Oct. 12, 1995); *Hinton v. Doney*, No. 93-2050, 1994 WL 20225, at *2 (6th Cir. Jan. 26, 1994); *Boswell v. Meyers*, No. 89-2144, 1990 WL 109230, at *1 (6th Cir. Aug. 2, 1990). Thus, Plaintiff's Eighth Amendment claim concerning his placement on food loaf restriction by Defendant Clark will also be dismissed.

### 4. Threats of Suicide

Plaintiff alleges that he wrote to Defendants Smith and Jones and asked to be placed on suicide watch. (Compl., ECF No. 1, PageID.4.) According to Plaintiff, they laughed, and Defendant Smith said that there would be "a party for the death of [Plaintiff]." (*Id.*) Plaintiff also indicates that he told Defendant Smith that he was suicidal over 5 times. (*Id.*, PageID.5.) Plaintiff states that he tried to kill himself twice. (*Id.*) He avers that Defendants Clark, Jones, Smith, Jenkins, and Leonhardt have told him to go ahead and do it. (*Id.*)

Under the Eighth Amendment, the unnecessary and wanton infliction of pain constitutes "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104–06. A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

The Sixth Circuit has held that "[a]n inmate's psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies." *Troutman v. Louisville Metro Dep't of Corrs.*, 979 F.3d 472, 482 (6th Cir. 2020) (quoting *Horn v. Madison Cnty. Fiscal Ct.*, 22

F.3d 653, 660 (6th Cir. 1994)). With respect to suicidal tendencies, the Sixth Circuit has stated: "A plaintiff meets the objective prong of the [deliberate indifference] analysis by showing that the inmate *showed suicidal tendencies* during the period of detention or that he '*posed a strong likelihood of another suicide attempt*.'" *Troutman*, 979 F.3d at 483 (emphasis added) (quoting *Perez v. Oakland Cnty.*, 466 F.3d 416, 423 (6th Cir. 2006); *Linden v. Washtenaw Cnty.*, 167 F. App'x 410, 416 (6th Cir. 2006)). This is because "[s]uicide is a difficult event to predict and prevent and often occurs without warning." *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005).

The Sixth Circuit has concluded that steps to prevent suicide are constitutionally required only in cases where "it [i]s 'obvious that there [i]s a 'strong likelihood that [the] inmate w[ill] attempt suicide[.]'" *Troutman*, 979 F.3d at 483 (quoting *Downard for Estate of Downard v. Martin*, 968 F.3d 594, 600 (6th Cir. 2020)). "This is a high bar[.]" *Downard*, 968 F.3d at 601. Thus, the subjective component "typically requires evidence that the inmate was already on suicide watch, previously attempted suicide under similar conditions, or recently expressed a desire to self-harm." *Id.* (citing *Grabow v. Cnty. of Macomb*, 580 F. App'x 300, 309 (6th Cir. 2014)). Moreover, "a prison official's duty to recognize an inmate's risk of committing suicide has a temporal component." *Andrews v. Wayne Cnty., Mich.*, 957 F.3d 714, 722 (6th Cir. 2020). To be held liable, "a prison official must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life." *Linden*, 167 F. App'x at 421 (quoting *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000)).

Even assuming that Plaintiff has alleged facts sufficient to meet the objective prong of an Eighth Amendment claim regarding his threats of suicide, he fails to allege sufficient facts to meet the subjective prong. Although Plaintiff alleges that he tried to kill himself twice, his complaint is

15

devoid of facts concerning when these attempts occurred. Nor does Plaintiff allege that he told any of the Defendants that he tried to kill himself twice. Moreover, his complaint is devoid of facts concerning when he wrote to Defendants Smith and Jones asking to be placed on suicide watch, and when he told Defendant Smith, on five occasions, that he was suicidal. Plaintiff's complaint is devoid of allegations that he "was already on suicide watch, previously attempted suicide under similar conditions, or recently expressed a desire to self-harm." *Downard*, 968 F.3d at 601. Moreover, while Plaintiff alleges that Defendants Clark, Jones, Smith, Jenkins, and Leonhardt told him to go ahead and do it, Plaintiff provides no facts regarding when these comments were allegedly made and if they were made at the same time when Plaintiff expressed a desire to commit self-harm.

Suicide risks, particularly in a prison setting, are certainly serious. Moreover, Defendants' alleged responses, particularly Plaintiff's allegation that they told him to go ahead and do it, are certainly unprofessional. While the Court is sympathetic to Plaintiff's mental health needs, his complaint fails to set forth sufficient facts from which the Court could infer that Defendants were deliberately indifferent to a strong risk that Plaintiff intended to commit suicide. The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims premised upon his threats of suicide and self-harm.

### C. Fourteenth Amendment Claims

#### 1. Due Process—Misconducts

Plaintiff contends that Defendant Clark issued a false misconduct ticket for threatening behavior. (Compl., ECF No. 1, PageID.5.) Plaintiff also suggests that Defendant Clark has issued Plaintiff "wrongfully written misconducts that aren't true." (*Id.*) The Court construes Plaintiff's complaint to assert Fourteenth Amendment due process claims premised upon Defendant Clark's issuance of allegedly false misconducts.

A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. at 484, 487. Under MDOC Policy Directive 03.03.105 ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id*. ¶ DDDD.

Plaintiff does not provide facts regarding the nature of all of the misconducts Defendant Clark has issued. He provides details for only one—a threatening behavior misconduct. Threatening behavior is a class I misconduct. *See id.* Attach A. Plaintiff, however, does not allege that any of the misconducts had any effect on the duration of his sentence—and he cannot. Plaintiff is serving sentences imposed in 2020 for assault with intent to commit great bodily harm and felony-firearm, and a sentence imposed in 2022 for assault of a prison employee. *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=587330 (last visited Feb. 28, 2024). Prisoners serving sentences for offenses committed after 2000 can accumulate only "disciplinary time" for major misconduct convictions. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id*. § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

Furthermore, Plaintiff does not allege facts suggesting that any misconduct convictions resulted in "atypical and significant hardship[s]." *Sandin*, 515 U.S. at 487. Plaintiff fails to allege any facts whatsoever regarding what sanctions, if any, he received as a result of the misconducts. For these reasons, Plaintiff fails to state Fourteenth Amendment procedural due process claims against Defendant Clark based upon the alleged false misconducts.[1]

### 2. Due Process—Deprivation of Property

Plaintiff also alleges that Defendants Clark and Shafer have taken several items of Plaintiff's personal property, including food, shoes, and clothes. (Compl., ECF No. 1, PageID.4–5.) The Court, therefore, construes Plaintiff's complaint to assert Fourteenth Amendment procedural due process claims against Defendants Clark and Shafer premised upon the deprivation of Plaintiff's property.

Any intended due process claim, however, is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no

---

[1] To the extent Plaintiff intended to raise substantive due process claims regarding the alleged false misconducts, he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). With respect to an allegedly falsified misconduct report, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X*, 175 F.3d at 378. Plaintiff's complaint, however, is devoid of any allegations from which the Court could infer that Defendant Clark acted to frame Plaintiff. Moreover, Plaintiff's allegations fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim.

18

federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland*, 57 F.3d at 479–80; *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, state post-deprivation remedies are available to him. Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Therefore, Plaintiff's due process claims against Defendant Clark and Shafer premised upon the deprivation of Plaintiff's personal property are subject to dismissal.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   March 22, 2024                                /s/ Paul L. Maloney
                                                       Paul L. Maloney
                                                       United States District Judge